[Cite as *State v. Parker*, 2022-Ohio-1115.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-22 |
| | : | |
| v. | : | Trial Court Case No. 2020-CR-98 |
| | : | |
| COREY DANIEL PARKER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of April, 2022.

. . . . . . . . . . .

SAMANTHA B. WHETHERHOLT, Atty. Reg. No. 0092010, Assistant Prosecuting Attorney, Champaign County Prosecutor's Office, Appellate Division, 200 North Main Street, Urbana, Ohio 43078
      Attorney for Plaintiff-Appellee

J. DAVID TURNER, Atty. Reg. No. 0017456, 101 Southmoor Circle NW, Kettering, Ohio 45429
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Corey D. Parker appeals a decision of the Champaign County Court of Common Pleas, Criminal Division, finding him guilty for violating the terms of his community control, revoking his community control, and sentencing him to an 18 month prison term. Parker filed a timely notice of appeal with this Court on June 11, 2021.

{¶ 2} The record in the instant case establishes that on May 20, 2020, Parker pled guilty to one count of trespass in a habitation, in violation of R.C. 2911.12(B), a felony of the fourth degree, and one count of criminal damaging or endangering, in violation of R.C. 2909.06(A)(1), a misdemeanor of the second degree. Thereafter on June 12, 2020, the trial court sentenced Parker to a term of community control for a period of five years, subject to standard adult parole authority (APA) conditions and special conditions of community control. The conditions of Parker's community control were as follows, to wit: 1) pay restitution to his fiancée, Keara Downing, in the amount of $15.00; 2) gain admission to and complete the West Central Community Based Correctional Facility program; 3) after completing the program, complete any "aftercare programming" as part of West Central's re-entry plan; 4) obtain an assessment and complete counseling for substance abuse, anger management, and mental health; 5) submit to random drug screens; 6) upon release from the residential facility, obtain and maintain tax-withholding employment; 7) have no contact with or be in the presence of Chelsea Smith or Nathaniel Smith.

{¶ 3} Parker's judgment entry of conviction stated that in the event his community control was revoked, the trial court would impose a definite term of 18 months in prison

for trespass and 90 days in jail for criminal damaging. The trial court ordered that the sentences would be served concurrently, for an aggregate sentence of 18 months in prison. Parker did not file an appeal of the trial court's decision.

{¶ 4} Significantly, Parker entered the West Central Facility on July 2, 2020. However, on August 20, 2020, Parker was discharged from the facility because he contracted hepatitis C and needed to seek medical attention.

{¶ 5} On May 5, 2021, APA Probation Officer Chris Caughman filed a notice of supervision violation alleging that Parker violated the conditions of his community control. Specifically, the notice alleged that Parker violated Champaign County standard condition of supervision #1, which states "I will obey federal, state and local laws and ordinances, including those related to illegal drug use and registration with authorities." The facts underlying the violation occurred on April 17, 2021, when Parker allegedly attempted to harm Downing, threw a knife at her, threatened to kill her, placed his forearm across her neck, and held her against her will.[1] The notice also alleged that Parker had violated the conditions of his community control by failing to pay over $700.00 in court costs. Finally, the notice alleged that Parker had failed to complete his substance abuse assessment and his anger management assessment as ordered by the trial court.

{¶ 6} A revocation hearing was held before the trial court on May 24, 2021, wherein the State presented evidence regarding Parker's alleged community control violations. At the conclusion of the hearing, the trial court found Parker guilty of all the violations set

---

[1] Because of his attack on Downing, Parker was later charged with and convicted of domestic violence, a felony of the third degree, in the Hardin County Court of Common Pleas in Case No. CRI20212071.

forth in the notice filed by the APA and proceeded to sentencing. Prior to imposition of sentencing, the trial court noted that it had reviewed and considered Parker's pre-sentence investigation report (PSI) and the community control violation report prepared by the APA. Thereafter, the trial court revoked Parker's community control and sentenced him to 18 months in prison for trespass and 90 days in jail for criminal damaging. The trial court ordered the sentences to be served concurrently, for an aggregate sentence of 18 months in prison. Parker was awarded 144 days of jail time credit as of May 24, 2021.

{¶ 7} It is from this judgment that Parker now appeals.

{¶ 8} Parker's sole assignment of error is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING PARKER GUILTY OF ALL OF THE COMMUNITY CONTROL VIOLATIONS AND ABUSED ITS DISCRETION BY FAILING TO COMPLY WITH THE LIMITATION SET FORTH IN R.C. 2929.15(B)(1)(c) WHEN IT REVOKED COMMUNITY CONTROL AND SENTENCED PARKER TO PRISON.

{¶ 9} In his sole assignment, Parker contends that the trial court abused its discretion when it found him guilty of all the community control violations alleged by the APA and sent him to prison.

{¶ 10} The right to continue on community control depends upon compliance with the conditions of community control and is a matter within the sound discretion of the trial court. *State v. Lewis*, 2d Dist. Montgomery No. 23505, 2010-Ohio-3652, ¶ 11.

Accordingly, we review the trial court's revocation of community control for an abuse of discretion. *State v. Morgan*, 2d Dist. Montgomery No. 26132, 2014-Ohio-5071, ¶ 11. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *State v. Dalton*, 2019-Ohio-4364, 147 N.E.3d 1205, ¶ 11 (2d Dist.).

{¶ 11} "[A] revocation of community control punishes the failure to comply with the terms and conditions of community control, not the specific conduct that led to the revocation." *State v. Black*, 2d Dist. Montgomery No. 24005, 2011-Ohio-1273, ¶ 17. Crim.R. 32.3, which governs revocation of community control, provides that the trial court "shall not impose a prison term for violation of the conditions of a community control sanction or revoke probation except after a hearing at which the defendant shall be present and apprised of the grounds on which action is proposed."

{¶ 12} "Community control violation proceedings are not equivalent to criminal prosecutions." *Black* at ¶ 12. Nevertheless, "[a] defendant is entitled to certain due process protections before a court may revoke community control sanctions, although the full panoply of rights due a defendant in a criminal prosecution does not apply to the revocation of community control." *State v. Harmon*, 2d Dist. Champaign No. 2007-CA-35, 2008-Ohio-6039, ¶ 6, citing *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). First, a defendant is entitled to a preliminary hearing to determine whether there is probable cause to believe that the defendant has violated the terms of his or her community control. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *State v. Blakeman*, 2d Dist. Montgomery No. 18983, 2002 WL

857659, *2 (May 3, 2002). Second, due process requires a final hearing to determine whether community control should be revoked. *Id.*

{¶ 13} At the final revocation hearing, the State must (1) provide the defendant with written notice of the alleged violations of community control; (2) disclose the evidence against the defendant; (3) give the defendant an opportunity to be heard in person and to present witnesses and documentary evidence; (4) allow the defendant to confront and cross-examine adverse witnesses; (5) afford the defendant a neutral and detached hearing body; and, (6) provide the defendant with a written statement by the fact finder as to the evidence relied upon and the reasons for revoking community control. *State v. Klosterman*, 2d Dist. Darke Nos. 2015-CA-9 and 2015-CA-10, 2016-Ohio-232, ¶ 15; *State v. Gilreath*, 2d Dist. Greene No. 2000-CA-1, 2000 WL 896319, *2 (July 7, 2000).

{¶ 14} R.C. 2929.15(B)(1)(a-c) states as follows:

(1) If the conditions of a community control sanction are violated or if the offender violates a law or leaves the state without the permission of the court or the offender's probation officer, the sentencing court may impose upon the violator one or more of the following penalties:

(a) A longer tem under the same sanction if the total time under the sanctions does not exceed the five-year limit specified in division (A) of this section;

(b) A more restrictive sanction under [R.C. 2929.16, 2929.17 or 2929.18];

(c) *A prison term on the offender pursuant to [R.C. 2929.14] and [R.C. 2929.15(B)(3)], provided that a prison term imposed under this division is*

*subject to the following limitations, as applicable:*

*\* \* \**

*(ii) If the prison term is imposed for any technical violation of the conditions of a community control sanction imposed for a felony of the fourth degree that is not an offense of violence and is not a sexually oriented offense, the prison term shall not exceed one hundred eighty days.*

*\* \* \**

(Emphasis added.)

**{¶ 15}** R.C. 2929.15(E) defines a technical violation as follows:

(E) As used in this section, "technical violation" means a violation of the conditions of a community control sanction imposed for a felony of the fifth degree, or for a felony of the fourth degree that is not an offense of violence and is not a sexually oriented offense, and to which neither of the following applies:

(1) The violation consists of a new criminal offense that is a felony or that is a misdemeanor other than a minor misdemeanor, and the violation is committed while under the community control sanction.

(2) The violation consists of or includes the offender's articulated or demonstrated refusal to participate in the community control sanction imposed on the offender or any of its conditions, and the refusal demonstrates to the court that the offender has abandoned the objects of the community control sanction or condition.

{¶ 16} As previously stated, Parker argues that the trial court erred when it terminated his community control and sentenced him to an aggregate 18-month prison sentence for violating the conditions of his community control. Specifically, Parker contends that his community control violations only amounted to "technical violations." Therefore, pursuant to R.C. 2929.15(B)(1)(c)(ii), the trial court could sentence Parker to no more than 180 days in prison. Relevant to this issue, the Ohio Supreme Court recently stated:

> * * * [T]he determination whether a violation is a "technical violation" under R.C. 2929.15(B)(1)(c) does not turn on whether the conduct at issue is criminal. As [*State v.*] *Davis*[, 12th Dist. Warren No. CA2017-11-156, 2018-Ohio-2672] indicated, a violation is "nontechnical" if, considering the totality of the circumstances, the violation concerns a condition of community control that was "specifically tailored to address" matters related to the defendant's misconduct or if it can be deemed a "substantive rehabilitative requirement which addressed a significant factor contributing to" the defendant's misconduct. *Davis*, 2018-Ohio-2672, at ¶ 17, 18; see also Black's [Law Dictionary] at 1463 (defining "technical" as "[i]mmaterial, not affecting substantial rights, without substance"). On the other hand, a violation is "technical" when the condition violated is akin to "an administrative requirement facilitating community control supervision." *Davis* at ¶ 18; see also Ballentine's [Legal Dictionary and Thesaurus] at 661 (defining "technical" as "[i]nvolved in detail or in form rather than in a

principle or in substance"). There is no single factor that determines whether a violation is technical or nontechnical. As indicated above, the statute allows the trial court to engage in a practical assessment of the case before it, i.e., to consider the nature of the community-control condition at issue and the manner in which it was violated, as well as any other relevant circumstances in the case.

State v. Nelson, 162 Ohio St.3d 338, 165 N.E.3d 1110, 2020-Ohio-3690, ¶ 26.

{¶ 17} At the revocation hearing, the trial court stated as follows:

Thank you. Court has reviewed the [PSI], as well as the violation report. The Court has re-reviewed the testimony presented, statements of counsel, statements of the Defendant, and Court's interaction with the Defendant. In imposing sentence, the Court considered and applied the purposes and principles of sentencing as set forth in [R.C.] 2929.11 Divisions A, B, and C. The Court also considered the seriousness of the conduct, likelihood of recidivism, and lack of service in the Armed Forces.

Court finds that Defendant initiated the domestic violence community control incident by consuming alcohol. Notwithstanding the medical and psychological implications for doing so. The Court finds that Defendant's relationship facilitated the community control violation offenses. And that the Defendant's 4-year old daughter was in the vicinity of the domestic violence incident. Court finds that during the course of the domestic violence community control violation incident Defendant initiated physical

contact with the victim and subsequently threw an 8-inch knife at the victim as the victim was leaving the residence. Actually, in the opinion of the Court, the victim was fleeing the residence.

Court finds that, notwithstanding the victim's testimony illustrated [sic], that the evidence is clear that the victim was in fear of her safety. And that the victim has previously been the victim of unrelated domestic violence convictions and community control violations by this Defendant.

Court finds that because the Defendant has failed to engage in rehabilitative programming while medical furlough from CBCF [West Central], it could have assisted the Defendant in relapse prevention and anger management. Court finds that Defendant has previously been unsuccessfully terminated from CBCF programming. The Defendant has a history of community control violations. Court finds that Defendant was previously adjudicated a delinquent child, has a history of criminal convictions, has not been rehabilitated to a satisfactory degree, and has not responded favorably to sanctions previously imposed.

Court also finds that because, in the opinion of the Court, the victim is minimizing the Defendant's criminogenic behaviors. As a result of the Defendant's historic lack of successful completion of programming, the Defendant, in the opinion of the Court, poses a risk to the health and safety to the Defendant's daughter if the Defendant is authorized to remain on community control. As the victim is dismissive of the Defendant's conduct

and the serious risk of harm it poses to a defenseless child [sic].

The purposes and principles of sentencing are designed to protect the public from future crime by the Defendant, punish the Defendant, and promote effective rehabilitation of the offender. In the opinion of the Court, not only does the Defendant and the victim have inabilities to control their own relationship, but they are certainly putting the health and safety of the child at risk. So while the Defendant's is that prison isn't going to help the Defendant[,] in the opinion of the Court, it keeps the child safe.

Sentencing Tr. 61-63.

{¶ 18} In the instant case, the record clearly establishes that Parker committed non-technical violations of his community control. As previously stated, the facts underlying the community control violation occurred on April 17, 2021, when Parker admitted that after drinking alcoholic beverages, he attempted to cause to harm Downing, threw a knife at her, threatened to kill her, placed his forearm across her neck, and held her against her will. Parker's conduct constituted new criminal offenses that were either a felonies or at least misdemeanors, and the violation was clearly committed while he was subject to community control sanctions. *See* R.C. 2929.15(E)(1).

{¶ 19} Parker's community control violations regarding his failure to complete substance abuse and anger management counseling also constitute non-technical violations pursuant to R.C. 2929.15(E)(2). As the trial court found, Parker demonstrated his refusal to participate in the conditions of his community control by failing to complete substance abuse and anger management counseling. Additionally, Parker's refusal

demonstrated to the trial court that he essentially abandoned the object of his community control conditions, which was to eventually achieve and maintain a stable and healthy lifestyle.

{¶ 20} Furthermore, after Parker was discharged from the West Central program, he continued to consume alcohol and failed to attend any Alcoholics Anonymous and/or Narcotics Anonymous meetings. Parker also failed to request information regarding treatment services in Hardin County where he lived and Champaign County where he was aware of other treatment services because of prior offenses he committed and through his involvement with Amanda Call at the Tri-County Jail. The record establishes that Parker informed the trial court that he had learned from Amanda Call that Champaign County had treatment programs for substance abuse, mental health, and medication-assisted treatment. Parker simply failed to take advantage of any of the programs.

{¶ 21} "An offender's significant failure to comply with any substantive rehabilitative requirement which was specifically-tailored to the offender's underlying conduct is not a technical violation for purposes of R.C. 2929.15(B)(1)(c). In addition, if the offender engages in a pattern of conduct that demonstrates a failure to comply with the community-control sanction as a whole, this is also not a technical violation." *State v. Eastman*, 2d Dist. Clark No. 2020-CA-5, 2021-Ohio-392, ¶ 21, citing *State v. Kernall*, 2019-Ohio-3070, 132 N.E.3d 758, ¶ 18 (1st Dist.). The conditions of Parker's community control in regards to substance abuse and anger management were specifically tailored to address his lengthy history of engaging in violent behavior directed at his fiancée, Downing, and his history of engaging in alcohol and/or drug related conduct in general.

Therefore, Parker's violent conduct towards Downing and his failure to complete substance abuse and anger management assessments amounted to non-technical violations, because those conditions were "specifically tailored to address matters related to the defendant's misconduct." *Nelson* at ¶ 26.

{¶ 22} Finally, we note that in *Bearden v. Georgia*, 461 U.S. 660, 672-673, 103 S.Ct. 2064, 2073, 76 L.Ed.2d 221 (1983), the United States Supreme Court held that:

"[I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine."

{¶ 23} In the instant case, the record indicates that the trial court failed to question Parker regarding his reasons for failing to pay his court costs pursuant to *Bearden*. However, any error in this regard is harmless since the trial court also found that Parker's

violent conduct towards Downing and his failure to complete substance abuse and anger management assessments were additional bases upon which to revoke his community control and send him to prison.

**{¶ 24}** Upon review, we conclude that the trial court's determination that Parker's violations of the conditions of his community control were nontechnical was supported by the record, and Eastman fails to identify any evidence to the contrary. Accordingly, the 180-day prison sentence limitation established in R.C. 2929.15(B)(1)(c)(ii) for prison terms resulting from a technical community control violation was not applicable to Parker's sentence, and the trial court did not err when it sentenced him to 18 months in prison.

**{¶ 25}** Parker's sole assignment of error is overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Samantha B. Whetherholt
J. David Turner
Hon. Nick A. Selvaggio